UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

LEO SCOTT, JR.

CIVIL ACTION

VERSUS

NUMBER 14-391-JWD-EWD

E.I. DU PONT DE NEMOURS
AND COMPANY

## RULING ON MOTION FOR LEAVE TO FILE ANSWER AND AFFIRMATIVE DEFENSES TO PLAINTIFF'S ORIGINAL COMPLAINT AND FIRST AMENDED COMPLAINT

Before the court is Defendant's, E.I. du Pont de Nemours and Company's ("Defendant"), Motion for Leave to File Amended Answer to Plaintiff's Complaint and Amended Affirmative Defenses.[1]  The motion is opposed.[2]  For the reasons set forth herein, Defendant's Motion for Leave to File Answer and Affirmative Defenses to Plaintiff's Original Complaint and First Amended Complaint is **GRANTED IN PART AND DENIED IN PART**.

### I.      Background

Plaintiff, Leo Scott, Jr. ("Plaintiff") filed the instant suit on June 25, 2014.[3]  Plaintiff alleges that while working as an operator at Defendant's Burnside plant, he was discriminated and

---

[1] R. Doc. 74.

[2] R. Doc. 78.

[3] In addition to the instant suit, Plaintiff also filed a separate action alleging retaliation under the Federal Claims Act ("FCA") on November 15, 2013.  *Leo Scott, Jr. v. E.I. du Pont de Nemours and Company*, No. 13-741-SDD-EWD, United States District Court, Middle District of Louisiana (the "FCA Suit").  Therein, Plaintiff alleges that while working as an operator, he was exposed to sulfur dioxide ($SO_2$) and sulfur trioxide ($SO_3$) gases which were leaking from equipment.  At the time of his alleged exposure, a separate *qui tam* action had been filed against Defendant for failing to report the gas leaks as allegedly required under the Toxic Substances Control Act ("TSCA").  *United States of American et al, Jeffery M. Simoneaux, Relator v. E.I. du Pont de Nemours and Company*, 12-219-SDD-SCR, United States District Court, Middle District of Louisiana (the "*Qui Tam* Action").  In the FCA Suit, Plaintiff alleges that as a result of providing factual information and deposition testimony for the *Qui Tam* Action concerning his exposure at the Burnside facility, Defendant retaliated against him through various forms of harassment and disciplinary actions.  As here, Plaintiff alleges he was wrongfully placed on probation on November 1, 2012 and was terminated on April 1, 2013.  FCA Suit, R. Doc. 1, ¶¶ 26 & 38.

1

retaliated against based on his race.[4]  Plaintiff alleges that his supervisors at the plant regularly committed discriminatory practices and retaliated against him for reporting these practices to human resources.  He alleges he was wrongfully placed on probation on November 1, 2012[5] and was terminated on April 1, 2013.[6]  In his Second Amended and Supplemental Complaint, Plaintiff additionally alleges that Defendant is liable to him under the Americans with Disabilities Act ("ADA").[7]  With regard to his ADA claim, Plaintiff alleges that an injury to his back resulted in disability[8] and that "Defendant failed to reasonably accommodate Plaintiff's known disability (to the extent accommodation was required) although the accommodation would not have created undue hardship for Defendant."[9]

In response to Plaintiff's Complaint, Defendant filed a Motion for Partial Dismissal, or alternatively, Motion for Partial Summary Judgment[10] and a separate Answer.[11]  Significant to Defendant's instant Motion for Leave, in answer to certain numbered paragraphs of Plaintiff's Complaint, Defendant asserted, without more, that the allegations "are subject to DuPont's pending Motion to Dismiss."[12]  On October 24, 2014, Defendant's Motion to Dismiss was denied.[13]  Thereafter, Defendant filed an answer to Plaintiff's First Amended Complaint and

---

[4] R. Doc. 1.

[5] R. Doc. 1, ¶ 55.

[6] R. Doc. 1, ¶ 63.

[7] R. Doc. 20.

[8] R. Doc. 20, ¶ 85.

[9] R. Doc. 20, ¶ 101.

[10] R. Doc. 8.

[11] R. Doc. 9.

[12] R. Doc. 9, p. 3 ("The allegations contained in Paragraphs 9-35 of the Complaint are subject to DuPont's pending Motion to Dismiss."); p. 6 ("The allegations contained in Paragraphs 60-63 are subject of (sic) DuPont's pending Motion to Dismiss.").

[13] R. Doc. 24.

Second Amended and Supplemental Complaint.[14]   However, these answers did not revisit Defendant's previous responses to the original Complaint based on Defendant's Motion to Dismiss.  Moreover, none of Defendant's answers set forth certain affirmative defenses Defendant now seeks to raise.[15]

## II.    Law and Analysis

### A.  Standard for Motion to Amend Answer

Federal Rule of Civil Procedure 15(a)(2) allows a party to amend its pleading with the opposing party's consent or with leave of court.  "Rule 15(a) requires a trial court to grant leave to amend freely, and the language of this rule evinces a bias in favor of granting leave to amend." *Jones v. Robinson Prop. Grp., LP*, 427 F.3d 987, 994 (5th Cir. 2005) (citations and internal quotation marks omitted).  While "[l]eave to amend is in no way automatic," the court "must possess a 'substantial reason' to deny a party's request for leave to amend."  *Marucci Sports, LLC v. National Collegiate Athletic Ass'n*, 751 F. 3d 368, 378 (5th Cir. 2014).  The district court is given discretion to grant or deny a motion to amend and may consider a variety of factors, including undue delay and undue prejudice to the opposing party.  *Id.*

### B.  Defendant's Request to Respond to Allegations in the Complaint

Defendant failed to answer certain allegations in the Complaint.  "To ensure that all pleadings are complete" Defendant seeks leave to amend its answer to the original Complaint "so that it has completely responded to all allegations of Plaintiff's Complaint following the Court's

---

[14] R. Docs. 25 and 26.

[15] In response to the original Complaint, Defendant asserted four affirmative defenses: (1) that Plaintiff's damages, if any, were caused by his own actions and not by the fault of Defendant or anyone for whom Defendant may be responsible; (2) that certain allegations were time barred; (3) that Plaintiff failed to exhaust his administrative remedies for certain claims; and (4) Plaintiff failed to mitigate his damages.  Additionally, Defendant reserved its right to set forth additional affirmative defenses and to file additional answers, third-party complaints, and/or counter-claims.  R. Doc. 9, pp. 7-8.  Defendant's answers to the First Amended Complaint and Second Supplemental and Amending Complaint incorporated by reference the previous affirmative defenses.  R. Docs. 25 & 26.

Ruling on DuPont's Motion [to Dismiss]."[16]  Federal Rule of Civil Procedure 8(b)(1)(B) requires a party to admit or deny the allegations in a complaint.  Defendant must fairly respond to the substance of each allegation.  Fed. R. Civ. P. 8(b)(2).  Although Plaintiff has filed an objection to Defendant's Motion for Leave, he does not set forth any objection to the filing of Defendant's answer; rather, Plaintiff's objections focus on the late addition of certain affirmative defenses discussed below.  Accordingly, because the Court finds that there is no substantial reason to deny Defendant's request to file an answer, and such answer would, as Defendant states, "complete" the pleadings, Defendant's Motion for Leave is GRANTED to the extent Defendant seeks to file its answer to Plaintiff's Complaint.

### C.  Defendant's Request to Allege Affirmative Defenses

Plaintiff explains that he objects to Defendant's ability "to file fifteen (15) affirmative defenses on the eve of trial, almost a year after the fact discovery cut-off."[17]  While Plaintiff asserts this generalized objection, he focuses his response on Defendant's proposed affirmative defenses relative to: (1) Defendant's purported legitimate, non-discriminatory and non-retaliatory reason for its adverse employment action;[18] (2) Defendant's proposed affirmative defenses regarding disability and reasonable accommodation;[19] and (3) Defendant's proposed affirmative defenses regarding an offset of damages.[20]

Under Federal Rule of Civil Procedure 8(c), a party must affirmatively state an affirmative defense in responding to a pleading.  If a defendant fails to raise an affirmative defense in its

---

[16] R. Doc. 74, p. 2.

[17] R. Doc. 1.

[18] *See*, R. Doc. 78, pp. 1-3 (discussing proposed Ninth and Tenth Affirmative Defenses).

[19] *See*, R. Doc. 78, pp. 3-4 (discussing proposed Sixteenth, Seventeenth, and Twenty-First Affirmative Defenses).

[20] *See*, R. Doc. 78, p. 4.

4

responsive pleading, it is waived.  Fed. R. Civ. P. 12(b); *Woodfield v. Bowman*, 193 F.3d 354, 362 (5th Cir. 1999).  "However, '[w]here the matter is raised in the trial court in a manner that does not result in unfair surprise…technical failure to comply precisely with Rule 8(c) is not fatal.'" *Pasco ex rel. Pasco v. Knoblauch*, 566 F.3d 572, 577 (5th Cir. 2009) quoting *Allied Chem. Corp. v. Mackay*, 695 F.2d 854, 855-56 (5th Cir. 1983).  "An affirmative defense is not waived if the defendant 'raised the issue at a pragmatically sufficient time, and [the plaintiff] was not prejudiced in its ability to respond." *Id.  See also*, *Burnett v. State Farm Fire and Cas. Co.*, 2010 WL 4627727, at *4 (M.D. La. Nov. 4, 2010) ("However, a defendant does not per se waive its right to plead an affirmative defense by failing to plead the defense in its answer.  Instead, the court may permit the defendant to amend its answer to include the defense if the plaintiff was on notice of the defense within a reasonable time and is not prejudiced by the defendant's failure to include the defense in its answer.") (internal citations omitted).  Courts in this circuit "look at the overall context of the litigation and have found no waiver where no evidence of prejudice exists and sufficient time to respond to the defense remains before trial."  *Pasco ex rel. Pasco v. Knoblauch*, 566 F.3d 572, 577 (5th Cir. 2009) quoting *Allied Chem. Corp. v. Mackay*, 695 F.2d 854, 855-56 (5th Cir. 1983).

### 1. The Proposed Affirmative Defenses Related to Defendant's Legitimate, Non-Discriminatory Reason for Termination

Per Plaintiff, Defendant's proposed Ninth and Tenth Defenses "purport to allege for the first time the defense of a legitimate, non-discriminatory and non-retaliatory reason for actions taken against Mr. Scott."[21]  Plaintiff contends that these defenses should not be allowed "at this

---

[21] R. Doc. 78, p. 1.  Defendant's proposed Ninth Affirmative Defense provides that "[e]ven if Plaintiff proves an adverse employment action, his employer had a legitimate, non-discriminatory reason for such action.  The employer's decision was not motivated by discriminatory animus."  R. Doc. 74-2, p. 6.  Defendant's proposed Tenth Affirmative Defense asserts that "Plaintiff's employer did not retaliate against him because he was engaged in a protected activity.  Rather, the actions of Plaintiff's employer were taken for a legitimate, non-discriminatory, non-retaliatory reason. Plaintiff cannot prove that this legitimate, non-discriminatory, non-retaliatory reason was pretextual."  R. Doc. 74-2, p. 6.

late stage of the proceeding" and points out that the discovery cut-off was in April, 2015.[22] Plaintiff further objects to these affirmative defenses[23] because he contends that Defendant failed to articulate its purported legitimate non-discriminatory reason and the defense is therefore "vague"[24] and because such defense would "change Plaintiff's burden in this case under the *McDonnel-Douglas* burden-shifting framework."[25]

The Court first considers whether Plaintiff is unfairly surprised by Defendant alleging a legitimate, non-discriminatory, non-retaliatory reason for his termination. In general, this defense is not novel to actions of this type. Under the burden-shifting framework of *McDonnell-Douglas*, it is expected that the defendant will produce a legitimate, non-discriminatory reason for employment action after the plaintiff establishes a prima facie case. 45C Am. Jur. Job Discrimination § 2403. Thus, Plaintiff was on notice of this defense generally by virtue of the

---

[22] R. Doc. 78, pp. 1 & 2.

[23] As a preliminary note, the Court assumes that an employer's legitimate, non-discriminatory and non-retaliatory reasons for the challenged employment action is an affirmative defense to liability that must be pled in Defendant's answer. *Compare*, *Harville v. Texas A&M University*, 833 F.Supp.2d 645, 658 (S.D. Tex. 2011) ("Because the defendants have offered an affirmative defense by giving legitimate, nondiscriminatory reasons for their contested actions, the burden shifts back to the plaintiff to show evidence that the defendants' explanations were pretextual."); *Goldsmith v. Bagby Elevator Co., Inc.*, 513 F.3d 1261, 1277 ("After the plaintiff has established the elements of a claim, the employer has an opportunity to articulate a legitimate, nonretaliatory reason for the challenged employment action as an affirmative defense to liability.") *with Parada v. Great Plains Intern. Of Sioux City, Inc.*, 483 F.Supp.2d 777, 808 (N.D. Iowa 2007) ("[Plaintiff's] contention that the employer's legitimate, non-discriminatory reasons for its actions is an affirmative defense that must be pleaded and proved by the employer is simply wrong. An employer is only required *to articulate* or *to produce* a legitimate, non-discriminatory reason for its actions.") (emphasis in original).

[24] R. Doc. 78, p. 3.

[25] R. Doc. 78, p. 2. "Under this framework, the plaintiff must make a *prima facie* showing of discrimination. One the showing is made, a presumption of discrimination arises, and the employer must 'articulate a legitimate non-discriminatory reason for the adverse employment action.' The burden then shifts to the plaintiff to show the articulated reason was pretextual." *Burton v. Freescale Semiconductor, Inc.*, 798 F. 3d 222, 227 (5th Cir. 2015). The Supreme Court has clarified that under this framework, the establishment of plaintiff's *prima facie* case creates a presumption that the employer unlawfully discriminated against the plaintiff. *St. Mary's Honor Center v. Hicks*, 509 US 502, 506 (1993). "Thus, the *McDonnell Douglas* presumption places upon the defendant the burden of producing an explanation to rebut the prima facie case – *i.e.*, the burden of 'producing evidence' that the adverse employment actions were taken 'for a legitimate, nondiscriminatory reason.'….It is important to note, however, that although the *McDonnell Douglas* presumption shifts the burden of *production* to the defendant, '[t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff.'" *Id.* (internal citations omitted).

nature of this litigation.  More importantly, the Court finds that Plaintiff was put on notice of the specific factual context of Defendant's asserted legitimate, non-discriminatory reason for his termination.  As alleged in Plaintiff's original Complaint, Plaintiff was advised on March 27, 2013 that Defendant "did not have a position for him that would accommodate his light duty medical restriction."[26]  Moreover, Defendant has explained in Plaintiff's FCA Suit that Defendant "'did not have a position…that would accommodate his light duty medical restriction' and was subsequently terminated because he was unable to perform his job…."[27]  Accordingly, to the extent Defendant's purported legitimate, non-discriminatory reason for its adverse employment action was an inability to accommodate Plaintiff's light duty medical restriction, the Court finds that Plaintiff would not be "unfairly surprised" by these proposed affirmative defenses.[28]

The Court next considers whether Plaintiff would be prejudiced by insufficient time to respond if Defendant's proposed affirmative defenses related to a purported legitimate, non-discriminatory reason were allowed.  While Plaintiff complains that discovery has been closed since April, 2015 and expresses concern about the upcoming trial date, the Court notes that the June 6, 2016 trial date was recently reset to September 26, 2016.[29]  Accordingly, while the Court GRANTS Defendant leave to amend its pleading to assert these defenses (as they relate to Defendant's inability to accommodate Plaintiff's light duty medical restriction), it will also grant Plaintiff leave to conduct additional discovery for a period of seventy (70) days on the issue of

---

[26] R. Doc. 1, ¶ 62.

[27] FCA Suit, R. Doc. 21, p. 9.

[28] However, in the event Defendant seeks to assert some other purported legitimate, non-discriminatory reason for its employment actions, the Court agrees that Defendant has not articulated such reason during this lawsuit and therefore would be barred from asserting same absent a showing that Plaintiff would not be unfairly surprised or prejudiced.

[29] R. Doc. 79.

Defendant's asserted legitimate, non-discriminatory, non-retaliatory reason for Plaintiff's termination.

### 2. The Proposed Affirmative Defenses Related to Disability and Reasonable Accommodation

Per Plaintiff, Defendant's proposed Sixteenth, Seventeenth, and Twenty-First Affirmative Defenses address Defendant's purported efforts to provide reasonable accommodation in light of Plaintiff's disability.[30]   The Court also considers Defendant's proposed Fifteenth Affirmative Defense to fall generally within this category.[31]   Plaintiff objects to these defenses, arguing that they "come too late"[32] and that Plaintiff pointed out in his October, 2015 Motion for Partial Summary Judgment that Defendant had asserted "no affirmative defense required to rebut" Plaintiff's *prima facie* case of disability discrimination "such as undue hardship".[33]   Plaintiff asserts that "allowing DuPont to wait five months *after* the issue was raised in Plaintiff's motion for summary judgment to present a defense of undue hardship is absolutely unfair and prejudicial to Plaintiff.   Undue hardship is obviously a fact intensive defense, and Plaintiff would be prejudiced by having such a defense raised at this late stage."[34]   Plaintiff further objects to these proposed defenses as "contrary" to the discovery taken already, and argues that "discovery in this

---

[30] Defendant's proposed Sixteenth Affirmative Defense asserts that "[i]f it is determined that Plaintiff can establish a *prima facie* case of disability discrimination, which is denied, DuPont took efforts to reasonably accommodate Mr. Scott's disability."  R. Doc. 74-2, p. 7.  Defendant's proposed Seventeenth Affirmative Defense states that "[i]f it is determined that Plaintiff can establish a prima facie case of disability discrimination, which is denied, DuPont contends that reasonable accommodation of Mr. Scott's disability would have posed an undue hardship."  R. Doc. 74-2, p. 7.  Defendant's proposed Twenty-First Affirmative Defense asserts that "DuPont provided all reasonable accommodations to the alleged disability of Plaintiff as required under the ADA.  To the extent any accommodation was not provided to Plaintiff, it was because it was not requested by Plaintiff and/or the request was not a reasonable accommodation and/or created an undue hardship on DuPont."  R. Doc. 74-2, p. 8.

[31] Defendant's proposed Fifteenth Affirmative asserts that "DuPont reasonably engaged in a good faith, interactive process regarding Plaintiff's restrictions and possible accommodations to determine if he could perform his job with reasonable accommodation."  R. Doc. 74-2, p. 7.

[32] R. Doc. 78, pp. 3 & 9.

[33] *See*, R. Doc. 55-1, p. 1.

[34] R. Doc. 78, p. 4.

case confirmed that DuPont did not engage in any undue hardship analysis with respect to Mr. Scott."[35]

In his Second Amended and Supplemental Complaint, Plaintiff alleged that "Defendant failed to reasonably accommodate Plaintiff's known disability (to the extent accommodation was required) although the accommodation would not have created undue hardship for Defendant."[36] Defendant denied this allegation.[37]   Moreover, in response to Plaintiff's Motion for Summary Judgment, Defendant argued that it did engage in "a good faith interactive process regarding Scott's restrictions and possible accommodations."[38]   Finally, Plaintiff's own opposition to the Motion for Leave indicates that some discovery relevant to "any undue hardship analysis with respect to Mr. Scott" has already occurred.[39]   Accordingly, the Court finds that Plaintiff would not be "unfairly surprised" by these affirmative defenses.

While the Court finds that Plaintiff would not be unfairly surprised by amendment of the pleadings to allow Defendant to assert affirmative defenses related to disability and reasonable accommodation, it recognizes that Plaintiff considers such defenses "fact intensive."[40]   While it appears that some discovery relevant to these issues has taken place, the Court GRANTS Defendant leave to file these affirmative defenses and will also grant Plaintiff leave to conduct additional discovery for a period of seventy (70) days on the issues of disability, reasonable accommodation, and undue burden raised by these proposed affirmative defenses.

---

[35] R. Doc. 78, p. 4.

[36] R. Doc. 20, ¶ 101.

[37] R. Doc. 26, ¶ 16.

[38] R. Doc. 63, p. 6.

[39] R. Doc. 78, p. 4.

[40] R. Doc. 78, p. 4.

### 3. The Proposed Affirmative Defense Related to Offset

By its proposed Twentieth Affirmative Defense, Defendant seeks to raise the issue of offset specific to any damages awarded in the related FCA Suit.[41]  Plaintiff objects to this affirmative defense "at this late stage" and asserts that if the defense is allowed, such defense underscores the need for consolidation of this suit with the FCA Suit.[42]

In the parties' September 11, 2014 Joint Status Report, Defendant stated that it "is not currently claiming any offset."[43]  This statement was made *after* the filing of the related FCA Suit on November 15, 2013.  Accordingly, at the time of the parties' Joint Status Report and Defendant's statement that it was not claiming any offset, it was aware of the FCA Suit and Plaintiff's claimed damages therein.  Accordingly, the Court DENIES Plaintiff's request for leave to assert the Twentieth Affirmative Defense.[44]

### 4. The Remaining Affirmative Defenses

Although Plaintiff's opposition focuses on Defendant's proposed affirmative defenses relative to a legitimate, nondiscriminatory reason for termination; reasonable accommodation of Plaintiff's disability; and offset, Defendant's proposed amendment includes an additional seven proposed affirmative defenses.  These additional proposed affirmative defenses address: (1)

---

[41] R. Doc. 74-2, p. 8.  Defendant's proposed Twentieth Affirmative Defense provides that "[t]o the extent Plaintiff seeks a monetary award for a category of damages also claimed in Civil Action No. 13-741, DuPont may be entitled to an offset of damages in order to avoid duplicate recovery by Plaintiff."

[42] R. Doc. 78, p. 4.

[43] R. Doc. 11, p. 4.

[44] Based on the timeline of filing the FCA Suit and the instant action, the Court will allow Defendant to assert the affirmative defense of offset based on potential duplicative recovery in the related FCA Suit.

Plaintiff's inability to prove discrimination or retaliation generally;[45] (2) Plaintiff's status as a qualified individual under the ADA;[46] and (3) the timeliness of Plaintiff's claims.[47]

With regard to Defendant's proposed affirmative defense relative to the timeliness of Plaintiff's claims, similar affirmative defenses were raised in Defendant's previous responsive pleadings[48] as well as Defendant's Motion to Dismiss.[49]  With regard to Plaintiff's status as a qualified individual under the ADA, this issue was raised by Defendant in response to Plaintiff's Motion for Summary Judgment.[50]  Finally, with regard to the proposed affirmative defenses related to Plaintiff's alleged inability to prove discrimination or retaliation, the Court does not find – and Plaintiff does not explain – how such defenses come as a surprise to Plaintiff in a suit alleging discrimination based on race and/or disability.[51]  In light of the newly extended trial date, as well

---

[45] Defendant's proposed Seventh Affirmative Defense asserts that "Plaintiff was not treated less favorably than other similarly-situated employees outside his protected group."  R. Doc. 74-2, p. 5.  Defendant's proposed Eighth Affirmative Defense asserts that "Plaintiff cannot prove that the alleged discriminatory actions by his employer of which he complains would not have occurred but for his race."  R. Doc. 74-2, p. 6.  Defendant's proposed Eleventh Affirmative Defense states that "Plaintiff cannot prove that the alleged retaliatory actions by his employer of which he complains would not have occurred in the absence of his protected activity."  R. Doc. 74-2, p. 6.  Defendant's proposed Twelfth Affirmative Defense asserts that "[n]o managerial personnel of Plaintiff's employer acted with malice or reckless indifference to Mr. Scott's federally protected rights.  Even if a factfinder determines such action occurred, it was contrary to the employer's good faith efforts to prevent discrimination in the workplace."  R. Doc. 74-2, p. 6.  Defendant's proposed Thirteenth Affirmative Defense asserts that "[a]t all times pertinent hereto, Plaintiff's employer made a good faith effort to comply with all applicable federal and state laws."  R. Doc. 74-2, p. 6.

[46] Defendant's proposed Fourteenth Affirmative Defense provides that "Plaintiff was not a qualified individual under the Americans with Disabilities Act, as he was not able to perform the essential functions of his job with or without reasonable accommodation."  R. Doc. 74-2, p. 7.

[47] Defendant's proposed Eighteenth Affirmative Defense asserts that "[c]ertain of the Plaintiff's claims are time-barred by the applicable statute of limitations and/or because the Plaintiff did not exhaust his administrative remedies with respect to those incidents."  R. Doc. 74-2, p. 7.

[48] *See*, *e.g.*, Defendant's Answer to Complaint, R. Doc. 9, p. 8 (setting forth affirmative defenses based on timeliness and failure to exhaust administrative remedies).

[49] R. Doc. 8-1.

[50] R. Doc. 63, p. 6 ("Since Scott has not alleged any other accommodation that would have allowed him to perform the essential functions of his job as an operator, he cannot establish the second required element of his prima facie case, *i.e.*, that he was a qualified individual with a disability who could perform the essential functions of his job with reasonable accommodation.").

[51] Moreover, to the extent these defenses assert that Plaintiff cannot carry his burden of proof, it is not clear to the Court that same would even constitute affirmative defenses.

as the fact that Plaintiff has failed to raise any particularized objections to these proposed affirmative defenses and these defenses are such that Plaintiff should not be unfairly surprised by same, the Court GRANTS Defendant leave to file these additional affirmative defenses.

### III.   Conclusion

For the reasons set forth herein, the Court **GRANTS IN PART AND DENIES IN PART** Defendant's Motion for Leave to File Answer and Affirmative Defenses to Plaintiff's Original Complaint and First Amended Complaint.[52]   Defendant shall file an Amended Answer and Affirmative Defenses within ten (10) days of the date of this Ruling that comports with the provisions of this Ruling.

Additionally, the Court GRANTS Plaintiff leave to conduct additional discovery for a period of seventy (70) days on the issues of Defendant's asserted legitimate, non-discriminatory, non-retaliatory reason for Plaintiff's termination, as well as Plaintiff's disability, reasonable accommodation, and undue burden.

Signed in Baton Rouge, Louisiana, on April 13, 2016.


**ERIN WILDER-DOOMES**
**UNITED STATES MAGISTRATE JUDGE**

---

[52] R. Doc. 88.